**FILED**

JUL – 3 2003

AO 241 (Rev. 5/85)

PETITION UNDER 28 USC § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

# United States District Court

| District | 5:03-0618 |
|---|---|

SAMUEL L. KAY, CLERK
U. S. District & Bankruptcy Court
Southern District of West Virginia

| Name Henry Persinger | Prisoner No. 20067 |
|---|---|

Place of Confinement       Mount Olive Correctional Complex

| Name of Petitioner (include name under which convicted) | Name of Respondent (authorized person having custody of petitioner) |
|---|---|
| Henry Clayton Persinger          V. | Thomas McBride, Warden |

The Attorney General of the State of:

## PETITION

1. Name and location of court which entered the judgment of conviction under attack _____

    Jackson County Court House, Ripley, West Virginia

2. Date of judgment of conviction _November 29, 1994_

3. Length of sentence_____25 to 65 year's

4. Nature of offense involved (all counts) _____ 2 Counts of first degree sexual assault
        2 Counts of incest

5. What was your plea? (Check one)
    (a) Not guilty          ☒
    (b) Guilty              ☐
    (c) Nolo contendere      ☐
    If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
    (a) Jury          x☐
    (b) Judge only     ☐

7. Did you testify at the trial?
    Yes ☒ No ☐

8. Did you appeal from the judgment of conviction?
    Yes ☒ No ☐

AO 241 (Rev. 5/85)

9. If you did appeal, answer the following:

(a) Name of court ___ West Virginia Supreme Court of Appeals ___

(b) Result__ Refused · ___

(c) Date of result and citation, if known ___ ~~Mayx7x1976x~~   May 16, 1976 ___

(d) Grounds raised ___ See Grounds Raised in Appendix (A) ___

_____

(e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

   (1) Name of court _____

   (2) Result _____

   _____

   (3) Date of result and citation, if known _____

   (4) Grounds raised _____

   _____

(f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

   (1) Name of court _____

   (2) Result _____

   _____

   (3) Date of result and citation, if known _____

   (4) Grounds raised _____

   _____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
Yes ☑ No ☐

11. If your answer to 10 was "yes," give the following information:

   ___ Jackson County Court House Repliy West Virgina ___
   (a) (1) Name of court _____

   (2) Nature of proceeding ___ Writ of habeas Corpus  Circuit Court ___

   _____

   (3) Grounds raised ___ See Appendix (B) ___

   _____

(3)

AO 241 (Rev. 5/85)

(4)  Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐   No ☒

(5)  Result _*Refused*_

(6)  Date of result _____

(b)  As to any second petition, application or motion give the same information:

(1)  Name of court _____

(2)  Nature of proceeding _____

(3)  Grounds raised _____

(4)  Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐   No ☐

(5)  Result _____

(6)  Date of result _____

(c)  Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?

(1)  First petition, etc.        Yes ☒   No ☐
(2)  Second petition, etc.      Yes ☐   No ☐

(d)  If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____

_____

12.  State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting same.

CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

AO 241 (Rev. 5/85)

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a)  Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b)  Conviction obtained by use of coerced confession.

(c)  Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d)  Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e)  Conviction obtained by a violation of the privilege against self-incrimination.

(f)  Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g)  Conviction obtained by a violation of the protection against double jeopardy.

(h)  Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i)  Denial of effective assistance of counsel.

(j)  Denial of right of appeal.

A.  Ground one: ___See enclosed Brief attached pages___  ___Appendix (c)___

Supporting FACTS (state *briefly* without citing cases or law) _____

_____

_____

_____

_____

_____

_____

B.  Ground two: _____

Supporting FACTS (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

_____

_____

## STATEMENT OF FACTS

In February 1994, Henry Persinger's (Petitioner below) five year old niece, Amanda R.( Herein and often in the record, known as Mindy.") allegedly reported to Keitha Graham, A school Counselor, that petitioner had fondled her and attempted to have intercourse with her at the Jackson County Home of the Petitioner's mother in December of 1993 (Tr. 258-259,261).

Transcripts references are to the record of the criminal trial). At the time, Mindy, her mother and her brothers were visiting with Henry Persinger and his mother. Mindy and her brothers, Mark, age 12 and Vincent, age 7, were removed from the home of Petitioner on March 3, 1994. Petitioner was questioned by police but was not arrested until May 1994.

When Mindy reported the alleged sexual abuse to Ms. Graham, she stated that Petitioner had touched her genital area with his fingers and his penis on many occasions. At trial, however Mindy testified that Petitioner touched her genitals only once -- with his penis. She testified that no one saw Petitioner do this, though Mark and Vincent were both in the room at the time. She stated that she reported this conduct to her mother  who did nothing about it ( Tr. 173-174; 179 ). Keitha Graham confirmed that Mindy told her she was not allowed to say anything to anyone ".. outside the family"(Tr p  262). Vincent Testified that he saw Petitioner touch Mindy's genitals with his penis when Mark was present. Vincent testified that when he told his mother and grandmother, Petitioner "whipped" him. Vincent also stated that his mother and grand mother told Petitioner to stop, but that said no and did it again (Tr., pp. 190-192) Vincent testified that he never saw the petitioner touch Mindy's genitals with anything else. Although Ms. Graham testified that Vincent told her that the petitioner had inserted his penis in Mindy's anus, Vincent later denied that the incident happened or that he told Ms. Graham that it happened

-1-

(Tr. p. 198) . Mark testified that he saw petitioner touch Mindy's genitals with his finger at a time when Vincent was present. Mark testified that he saw the petitioner do this twice, and that he did not see him touch Mindy with anything but his finger. Petitioner on the other hand testified that he had no sexual contact with Mindy. (Tr.P.341). When questioned by the police on March 3, 1993 Petitioner stated that he had observed Mindy and her brother mark engaged in what appeared to be oral sex,an occurrence he reported to the children's mother.The Petitioner,s mother Lenora May P. and his sister Myrtle Marie R. sometimes identified as "Myrtle" (Mindy's mother) testified that the children never reported that Petitioner touched Mindy inappropriately (Tr. Pg's, 366, 367, 373, 374, 404, 405).

The most damaging evidence, and the only opinion testimony that Mindy had been sexually abused by vaginal penetration came from the testimony of Ernest R. Breitinger, M,D., a family practitioner at Jackson General Hospital, who examined Mindy on March 29, 1994, for sexual abuse--some 26 days after Mindy had been removed from her mother's custody. Dr. Breitinger testified that Mindy told him petitioner had inserted his finger into her vaginia and that his examination revealed that her hymen was missing, that the opening to the vaginal area was enlarged,and scarring which indicated some previous stretching of the vaginal membrane (Tr.pp.295,297-298).

At trial Dr. Breitinger was qualified as an expert in the fields of family practice and pediatrics. He testified that the results of the physical examination findings were consistent with some sort of penetration of Mindy's vagina and that as a result he had a strong suspicion that she had been sexually abused Dr. Breitinger found no physical of anal or rectal penetration ( Tr.p.301).Dr.breitinger and his nurse, Tracy Young, testified that Mindy told them that "Uncle Henry" touched her genital area after Christmas 1993

(Tr. Pg. 294, 308). Initially,Mindy told Dr. Breitinger and Nurse Young that Petitioner touched her through her clothing, but, after after she was undressed, she told them that the petitioner had touched her when she was not wearing clothing. Mindy told Dr. Breitinger that Petitioner had touched her only with his fingers, but told Nurse Young that he had also touched her with his penis (Tr.p.311) nurse Young said Mindy did not seem to be upset about her questions: "No, in fact, it almost seemed like a game to her. (Tr.Pg. 309).

Despite the numerous inconsistencies in the testimony at trial the jury found the petitioner guilty of two counts of first-degree sexual assault and two counts of incest, each of which offenses requires evidence of penetration.

111. ASSIGNMENT OF CONSTITUTIONAL VIOLATION

1.    The Court Violated the Petitioner's Constitutional right to due process by disregarding newly discovered evidence relating to the qualification of Dr. Breitinger.

2.    The trial Court's failure to allow petitioner to introduce evidence of specific acts of prior sexual abuse by others constituted a manifest injustice", violating Petitioner's right to a fair trial guaranteed by the Fourteenth Amendment to the United States Constitution and by Article 111, section 10 of the Constitution of West Virginia.

3.    The States Failure to disclose exculpatory evidence prior to Trial denied Petitioner his right to due process of law under the fourteenth Amendment to the United States Constitution and Article 111, section 10 of the Constitution of West Virginia.

IV. POINTS AND AUTHORITIES

1.    Newly discovered evidence is one of the recognized grounds for prosecuting a petition for post-conviction relief W.Va.Code, 53-4A-1,et seq.; Losh v.McKenzie, 166 W.Va.762,2 S.E.2d 606 (1981). West Virginia. Code, 53-4A-1,et seq.

-3-

2.    The evidence must appear to have been discovered since the trial and its absence satisfactorily explained. it must appear that plaintiff was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. It must be new and material, and not merely cumulative. It must be such as ought to produce an opposite result at a second trial on the merits. State v. Frazier,162 W.Va. 935, 253 S.E.2d 534 (1979).

3.    If the above factors are satisfied in cases involving after-discovered impeachment evidence which goes to a key prosecution witness, a new trial should be granted. State V. Stewart, 161 W.va. 127, 239 S.E.2d 777 (1977).

4.    Evidence of the victim's past sexual conduct with persons other than the defendant is admissible where the court determines at a hearing out of the presence of the jury that such evidence is specifically related to the acts for which the defendant is charged and is necessary to prevent manifest injustice. Rule 404 (a) (3) of the West Virginia Rules of Evidence; Fourteenth Amendment to the United States Constitution; Article 111, Section 10 of the West Virginia Constitution.

5.    There are instances in which the probative value of such evidence out weighs its prejudicial effect and statutory provision with forecloses any evidence of the victim's sexual activities with persons other than the defendant would deny the defendant his constitutional right to effectively confront his accusers. State v. Green, 163 W.Va. 121,286 S.E. 2d 257 (1979); State v. Persinger, 169 W.VA. 121, 286 S.E. 2d 26 (1982).

6.    Where the evidence is close, it is more likely that evidentiary error will infect the trial with fundamental unfairness warranting habeas corpus relief. See Little v. Johson, 162 F.3d 855 (5th Cir. 1998), cert. denied, 526 U.S. 1118,119 S.CT.1768,143 L.Ed. 2d 798 (1999); Mills v. Singletary, 161 F.3d

-4-

1273 (11th Cir.1998); Maurer v. Minn.Department of Corrections, 32 F. 3d 1286 ( 8th Cir. 1994).

7.    The State's failure to disclose to the defendant exculpatory  evidence is a violation of due process. Brady v.Maryland, 373 U.S. 83 (1963); State v. Hatfield, 169 W.VA. 191,286 S.E.2d 402 (1982); State v. Cowan, 156 W.VA. 827, 197 S.E.2d 641 (1973).

8.    Exculpatory impeachment evidence is subject to Brady rule. U.S. v. Bagley,473 U.S. 667, 105 S.CT. 3375, 87 L.Ed. 2d. 481 (1985);  Giglio v. U.S.,405 U.S. 150,92 S. CT. 763, 31 L.ED.2d (1972).

9.    The same Rules apply to late discloser of evidence where the failure to close is prejudicial to the defendant. State v. Trail, 174 W.VA. 656, 328 S.E.2d 67 (1985); Wilhelm V. Whyte, 165 W.VA. 259,239 S.E.2d 735 (1977).

10.   Late discloser of evidence that prevent the Defendant from adequately investigating the case violates due process. prejudice results when the failure to disclose hampers the defendant's preparation of his or her case. State v. Grimm, 165 W.VA. 547,270 S.E. 2d 173 (1980).

### V.Argument

The Court erred by disregarding newly discovered evidence relating to the qualification of Dr. Breitinger.

The only physical evidence introduced at trial indicating that Mindy had been  sexually  abused  by  penetration  of  the  victim's  vagina  was  Dr. Breitinger's testimony (TR.284-306), copy attached for the Courts convenience) as  to  the  results  of  his  March  29,  1994  examination.  This  testimony constituted the only objective evidence of penetration, an essential element of  both  first  degree  sexual  assault  and  incest,  offered  by  the  State.  The sexual abuse and incest statutes under which the Defendant was convicted shows that penetration,however slight, is a necessary element of the two offenses.

In fact, the instructions to the jury given in this case emphasize the necessity of such penetration. See sexual assault instruction (Tr.pp. 473-475) and incest instruction (Tr.pp. 479-481).

After trial however, Petitioner discovered that Dr. Breitinger had been the subject of evidence of disciplinary action by the West Virginia board of Medicine Hereinafter known as" the Board" at the time of trial. Dr. Breitinger was investigated by the board for having lied on his license application and upon allegations of bizarre behavior which resulted in the withdrawal of his application and for licensure in New Jersey. These investigations cast a doubt not only on his qualifications, but also on his competency and mental status.

The newly discovered evidence (consisting of the board's file Defendant's Exhibit 21) showed that Dr. Breitinger has been licensed to practice medicine and surgery in West Virginia since July 12, 1993. On May 13, 1994, however, the New Jersey Board of State Board of Medical Examiners Hereinafter known as the examiners issued an order allowing Dr. Breitinger to withdraw his application for medical license in New Jersey.

When asked to explain a three and one half year gap in his practice which appeared on his curriculum vitae, Dr. Breitinger had voluminous enclosure"s supporting his allegation that during the three and a half years, he had been obliged to pursue legal proceedings against military and civil officers of the United States.. in response to documented incidents of medical negligence, public endangerment corruption, conspiracy and cover-up, the submission of lies to Congress, and.contempt and contempt and subversion of the Constitution of the United States to include Treason against the United States by innumerable military and civil officers of the United States, and which include the Governor of the State of New jersey.

As a consequence of this bizarre response, the Examiners asked Dr. Breitinger to submit to a psychiatric exam. Dr. Breitnger appealed, indicating that one of the military officers implicated in his allegations of wrong doing had influenced this decision, but subsequently talked to a psychiatrist, who indicated that Dr. Breitinger's allegations of conspiracies, cover-ups, and treason might be distortions" and his statements could be construed as pathological."

Dr. Breitinger took offense at this characterization and refused to turn over a copy of the psychiatrist's report to the Examiners. He also filed a document with the Examiners, accusing them of: eager and fully conscious adherence to documented enemies of the lawfully ordained Civil Government of the United States and the... deliberate provision of aid and comfort to them (TREASON...). (Emphasis in original)  Dr. Breitinger further accused the Examiners of corruption,fraud and treason and stated that he looked forward to the public renunciation of the treasonous and totalitarion policies and practice of the New Jersey Board of Medical Examiners, The immediate and public resignation of the members of the board, and the surrender of all those involved to the Lawful Authority of the People of the United States pending the assembly of a People's Tribunal of the United States....

Copies of this document were provided to the President, Vice President , and Attorney general of the United States, as well as to numerous State and Federal Official and professional medical associations. At the bottom of the document, Dr. Breitinger wrote in large bold letters that all documents were available from William S. Sessions, Director of the F.B.I.,and suggested that readers call a stated telephone number with the notion: "OPERATORS ARE STANDING BY."

Given the content and tenor of Dr. Breitinger's correspondence, "the Examiners harbored concerns about his capacity to practice medicine and surgery" and allowed Dr. Breitinger to withdraw his application for licensure in New Jersey. In June of 1994, however, the Board's Executive Director, Ronald D. Walton was notified of the action taken by the Examiners in New Jersey. Mr. Walton requested additional information, and was provided with a copy of the Examiner's May 13, 1994 order.

After reviewing the order, Mr. Walton wrote Dr. Breitinger on September 24, 1994, Noting that on his West Virginia license application and in an interview with a Board member,Dr. Breitinger had denied ever having appeared before a medical disciplinary Board. Mr. Walton opined that, in view of the Examiner's order, it appeared that Dr. Breitinger had answered these questions falsely and offered to allow Dr. Breitinger to surrender his medical license with out further proceedings. Dr.Breitenger responded that the accusations were unfounded, false, and bordering on libel and stated that Mr.Walton had misunderstood the Examiner's order.

On November 14, 1994 the Board issued a complaint charging Dr. Breitinger with lying on his license application. An investigation revealed that he had been investigated by the Secret Service for sending posters containing the words "WANTED DEAD OR ALIVE " and letters to the President, Vice President and Attorney General of the United States and Other Government officials.

In June 1995, Dr. Breitinger was advised that he would be required to undergo a complete mental and physical examination and that his failure to comply would be prima facie evidence of his inability to practice medicine and surgery competently. Although he understood the consequences of doing so, Dr. Breitinger failed to appear for the scheduled mental and physical examination. Instead, he filed a "Complaint of Wrong' against Mr.Walton. The Board

subsequently issued a second complaint against him for refusing to submit to the examinations.

Thereafter, Dr. Breitinger embarked on a campaign against Walton. In a letter to two thousand persons in Ravenswood area, Dr. Breitinger accused Mr. Walton of "documented corruption", "a nearly year-long personal vedetta," "fraud," bureaucratic corruption.... [and] perpetrating a vindictive hate-campaign" against Dr. Breitinger " for apparently racist reasons", and of having permanently soiled " Dr. Breitinger"s file with his filthy racist fingerprints." He included with this correspondence an undated letter, addressed to the Governor Caperton, repeating these allegations,which he urged the recipients to mail and a letter from Dr. Breitinger to Governor Caperton in which the previous allegations were repeated, along with a statement that Mr.Walton: is operating under a bigoted psychology of anti-Semitic racism that is incapable of accepting truthful correction by someone whom he perceives to be of "inferior"Jewish heritage, although given the opportunity, Dr. Breitinger failed to produce any evidence to support these allegations, or to explain his refusal to submit to the required medical examinations. or to rebut the findings of the Examiners. Consequently,On January 25,1996, the Board suspended Dr. Breitinger's License to practice medicine in West Virginia.

Newly discovered evidence is one of the grounds for prosecuting a petition for post - conviction relief W.VA. Code, 53-4A-1 et seq.; Losh v. McKenzie,166 W.VA. 762 277 S.E. 2d 606 (1981).

A new trial will not be granted on the ground of newly discovered evidence unless the case comes with in the following rules:

(1)    The evidence must appear to have been discovered since the trial, and from the affidavit of a new witness, what such evidence will be, or its absence satisfactorily explained.

(2)   It must appear from the facts stated in his affidavit that plaintiff was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict.

(3)   Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of the same kind to the same point.

(4)   The evidence must be such as ought to produce an opposite result at a second trial on the merits.

(5)   And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side. Syllabus, State v. Frazier, 162 W.VA. 935,253 S.E. 2d 534 (1979). However, this Court held that if the first four factors are satisfied in cases involving after discovered impeachment evidence which goes to a key prosecution witness, a new trial should be granted. State v. Stewart, 161 W.VA. 127,239 S.E.2d 777 (1977)

Here,Petitioner's newly discovered evidence meets the test of Stewart. The evidence was not discovered until after trial, and because of privacy restrictions on investigations of the Board of Medicine, it could not have been discovered with due diligence beforehand. See West Virginia Code, 30-3-14(h) (1989). The evidence is new and not merely cumulative. To be"cumulative," newly discovered evidence must not only tend to prove facts which were in evidence at trial, but must be of the same kind of evidence as that produced at trial to prove these facts; if it is of a different kind, though upon same issue, or of same kind on a different issue, new evidence is not cumulative. State v. Helmick, 201 W.VA. 163,495 S.E. 2d 262(1997)

With regard to the fourth factor, the only physical evidence supporting penetration as an essential element of sexual assault and incest came from Dr. Breitinger's expert testimony. Dr. Breitinger was qualified as an expert based

in part, on the fact that he was then licensed to practice medicine in West Virginia. The trial Court could well have reconsidered qualifying him as an expert witness if it had been aware of the then pending investigation by the Board and the facts giving rise to it.

Further, Dr. Breitinger and Ms. Graham offered the only evidence of penetration. In Ms. Graham's case, her testimony (Tr.219-283_ concerning penetration consisted of repeating hear say statements of the victim; in contrast, the testimony of Dr. Breitinger was based in large part upon his physical examination of the child. The expert testimony of Dr. Breitinger as a physician lent a certain cachet to the state's weak circumstantial case. Without that cachet, it is likely that the Petitioner would not have been convicted at trial.

In these circumstances, the newly-discovered evidence of deceit and bizarre behavior by the state's expert clearly would have had an enormous impact on the questions of his credibility and competency and upon the trial Court decision to qualify him as an expert witness. Consequently, the Petitioner is entitled to a new trail.

The trial Court's failure to allow the Petitioner to introduce evidence of specific acts of prior sexual abuse by others constituted a manifest injustice", violating the Petitioner's right to a fair trial guaranteed by the Fourteenth Amendment to the United States Constitution and by Article.III, Section 10 of the Constitution of West Virginia.

At trial, the Petitioner sought to introduce testimony that Mindy had been the subject of along standing sexual abuse at the hand of her parents and her siblings. The State opposed the admission of such evidence at trial through a motion in limine, arguing that the evidence was inadmissible under the rape shield statute, W.VA. Code 61-8B-11 (b) (1986). The Trial Court agreed, and the

evidence of sexual abuse of Mindy by other family members was excluded. The parties were allowed to introduce a stipulation that Mindy had been sexually abused by some one else Christmas 1993.

West Virginia Code 61-8B-11(b) provides that in prosecutions for sexual offenses, evidence of specific instances of the victom's sexual conduct with persons other than the defendant is not admissible except for purpose of impeaching credibility, "if the victim first makes his or her previous sexual coduct an issue at trial by introducing evidence with respect thereto." The reason giving for excluding evidence of the past conduct of the alleged victim of a sexual assault is that evidence is not relevant. State v. Pancake,170 W.VA. 690,296 S.E. 2d 37 (1979).

In State v. Green Supra, However, the Supreme Court of Appeals recognized that there were instances in which the probative value of such evidence outweighs its prejudicial effect and that a statutory provision that forecloses any evidence of the victim's sexual activities with persons other than the defendant would deny the defendant his constitutional right to effectively confront his accusers. See State v. persinger, 169 W.VA. 121,286 S.E. 2d 26 (1982).Further Rule 404 (a) (3) of the West Virginia Rule s of Evidence which was in effect at the time of the Petitioner's trial, specifies that in prosecution for sexual offenses, evidence of past sexual conduct with the defendant is governed by West Virginia Code, 61-8B-11, but evidence of the victim's past sexual conduct with persons other than the defendant is admissible "where the Court determines at a hearing out of the presence of the jury that such evidence is specifically related to the act or acts for which the defendant is charged and is necessary to prevent manifest injustice.

The facts of this case fit within this limited exception. The evidence, preserved by the defense by vouching the record, shows that not only Mindy, but

-12-

her siblings as well, were repeatedly the subjects of horrific sexual abuse by their parents long be fore the family came in contact with the petitioner. From 1982 until 1989 or 1990, the family lived in Ohio. Witnesses report having observed the parents sexually abusing the children, the children engaged in sexual activity with each other and the children being required to watch their parents engage in acts of sexual intercourse with each other.

In 1989 or 1990, warrants were issued against the parents as a result of an incident where another of their children, aged 5 or 6 Month, was severely burned. When advised that arrest and removal of the children was imminent, Mindy's Father drove the children and their mother to West Virginia. He returned to Ohio alone and was arrested and convicted of child endangerment. The warrant against the children's mother is so far as the Petitioner knows, is still outstanding.

Before coming to the home the Petitioner shared with his mother, Mindy's mother and the children lived in a housing project in Charleston West Virginia. Witnesses testified that they frequently observed the children engaged in inappropriate sexual behavior with each other in full view of the other residents of the housing projects. There was also testimony indicating that a sexual relationship may have existed between the mother and one of the children. The family left Charleston after complaints were filed with the Kanawha County Office of the Department of Health and Human Resources. Hereinafter known as D.H.H.R.

The family did not physically visit in the home the petitioner shared with his mother until shortly before Christmas of 1993. At the same time the Petitioner was alleged to have sexually abused Mindy, Witnesses testified that they observed the children engaging in inappropriate sexual activity with each

-13-

other. The same type of activity was reported by Mindy's foster mother after the petitioners arrest and nine days after the children was taken from the home.

In State v. Peyatt, 173 W.VA. 317,315 S.E.2d 574 (1983), this Court was faced with a situation remarkably similar to the one presented in this case. A child claimed that the defendant, her father, had sexually abused her from the age of four until the age of twelve. After expert medical testimony that the child's hymen was gone, the defense sought to introduce evidence that the child had been sexually promiscuous with other males to rebut the inference that the defendant was responsible. Although the Court held that the trial Court did not abuse its discretion in excluding the evidence, it is clear that the Court's decision is based in large part on other factors than the propriety of admitting the evidence under the rape shield law.

Here, the defense was not attempting to show that Mindy was sexually promiscuous or to smear her. As is noted throughout this petition, the State's case consisted almost entirely of inconsistent statements by the children and hearsay testimony by the adults. Consequently, credibility was a critical issue at trial. One of the defense contention's was that the children had been repeatedly and consistently sexually abused by their parents and had engaged in inappropriate sexual activity with each other. This raised a legitimate issue as to whether the children had  a motive to make false accusations against issue  he Petitioner. With credibility such a key issue, evidence that the children had engaged in similar inappropriate behavior before visiting in the petitioner's home was essential to establish not only that the children had a motive for fabricating their allegations, but also to show how the children had learned such behavior.

While the parties stipulation brought to the jury's attention the fact that someone other than the petitioner had previously sexually abused Mindy, it did not provide corroboration for the defense's contention that the children had a motive to fabricate the allegations or explain to the jury how children of such tender years would be so familiar with the vocabulary and the acts described. The commonplace, almost mundane, sexual abuse suffered by this child for most of her short life would result in inappropriate sexual conduct and an inability to distinguish the sexual acts perpetrated upon her from those in her imagination.

Evidentiary errors are not ordinarily grounds for habeas corpus relief. See State ex. rel. Azeez v. Mangum, 195 W.VA. 163,465 S.E. 2d 163 (1995) State Ex. rel. McMannis V. Mohn, 163 W.VA. 129,254 S.E. 2d 805 (1979),cert. denied, 464 U.S. 831,104 S.Ct. 110,78 L.Ed.2d 112(1983). However,where the evidence is close,it is more likely that evidentiary error will infect the trial with fundamental unfairness warranting habeas corpus relief. See little v. Johnson, 162 F. 3d 855 (5th Cir. 1998),cert. denied,526 U.S. 1118,119 S.Ct. 1768,143 L.Ed. 2d 798 (1999); Mills v. Singletary, 164 F.3d 1286 (8th.Cir. 1994). The exclusion of evidence in this case deprived the Petitioner of a meaningful opportunity to present an adequate defense. Consequently,due process requires that he be given a new trial.

3. The State's failure to disclose certain exculpatory evidence before trial deprived the Petitioner of his right to Due process guaranteed by the Sixth Amendment to the U.S. Constitution and b Article 111,Section 10 of the West Virginia Constitution.

At trial, counsel for the Petitioner sought discovery of copies of records of the D.H.H.R. relating to reports of inappropriate sexual behavior by the children before they visited in the Petitioner's home. Although these

records had been in the possession of the State for months, they were provided to the Petitioner only six days before trial and only after issuance of a subpoena duces tecum. Moreover. the records that were provided had been redacted to conceal with the names of the person who made the referrals. The trial Court denied defense counsel's motion for a continuance and motion to compel discloser of that information.

In Brady v. Maryland, 373 U.S. 83 (1963),the United State Supreme Court recognized that the State's failure to disclose to the Defendant exculpatory evidence is a violation of due process.See State v. Hatfield,169 W.VA. 191 286 S.E. 2d 402 (1982); State v. Cowan,156 W.VA. 827,197 S.E.2d 641 (1973). Even exculpatory impeachment evidence is subject to the Brady rule. U.S. v. Bagley,473 U.S.667,105 S.Ct.3375,87 L.Ed. 2d 481 (1985); Giglio v. U.S. 405 U.S. 150,92 S.Ct. 763,31 L.Ed. 2d (1972). The same rules apply to late discloser of evidence where the failure to disclose is prejudicial to the Defendant. State v. Trail,174 W.VA. 656,328 S.E.2d67 (1985); Wilhelm v. Whyte,165 W.VA. 259,239 S.E.2d 735 (1977). Prejudice results when the Failure to disclose hampers the defendant's preparation or presentation of his or her case. State v. Grimm,165 W.VA. 547,270 S.E. 2d 173 (1980). None discloser or late discloser of evidence that prevents the defendant from adequately investigating the case violates due process. See People v. Robinson,189 111.App. 3d 323,136 111. Dec. 744,545 N.E.2d 268 (1989); Corn. V.Lam Hue to, 391 Mass. 301,461 N.E. 2d 776 (1984).

Here, the State's late discloser of the D.H.H.R. record prevented the defense from learning about critical evidence, namely the fact that the children had been reported as having engaged in inappropriate sexual behavior before moving to Jackson County, until six days before trial. Further, the trial Court's refusal to grant a continuance or compel the State to disclose

the names of the persons who reported the events in the D.H.H.R. reports prevented defense counsel from interviewing those witnesses and severely restricted his ability to investigate and prepare for trial.The need for investigation was particularly critical in this case, where the key issue at trial was the credibility of the Petitioner and the State's witnesses. see State v. Hall, 174 W.VA. 787, 329 S.E.2d 860 (1985).

CONCLUSION

A trial of a man who is charged with sexually assaulting a child is always an event characterized by highly charged emotions.Our revulsion at the thought of an abused child can some times color our judgment, and juries may be prone to convict on questionable evidence. As Justice Cleckley stated in a dissent in State v. Hottinger,194 W.VA. 716,461 S.E. 2d 462 (1995):

As a society, we have given much to the war against sexual assault on our citizens,which is the way it should be.But one thing we should not sacrifice is the fundamental constitutional principle that no man or woman may be convicted of a crime except upon proof beyond a reasonable doubt.

Henry P. was convicted upon the testimony of an expert  witness whose judgment and expertise are questionable. His qualification would have been subject to a vigorous attack had counsel known about his serious problems. That evidence was not discovered until after the trial. and due diligence would not have secured it prior to the verdict. While the evidence would have been used to discredit or impeached DR.Breitinger, it is of such a nature that it rises to a constitutionally protected right. It might well have caused jurors to have reasonable doubt.

Equally damaging to Petitioner's case (probably even more damaging.in fact) was the testimony of Mindy. There is no question that Mindy had been sexually abused; it was stipulated that some one abused her before Christmas

of 1993. When children of tender years are intimately familiar with sexual acts and are comfortable discussing such acts, their accusatory testimony is very credible.

Evidence that other family members had abused her would have had great probative value. by delaying compliance with discovery regarding the Ohio abuse and neglect case until six days before trial, the defense was at a decided disadvantage in securing the attendance of out of state witnesses. Henry P.'s right to a fair trial was seriously damaged by his inability to effectively challenge Mindy's credibility.

As a result of all of the above Petitioner prays that this Court accepts his appeal of the denial of his petition for a Writ of Habeas Corpus. Petitioner contends that he is entitled to a new trial and that the trial Court should be directed that he be allowed to introduce evidence of specific acts of prior sexual abuse of Mindy and other children by other members.

AO 241 (Rev. 5/85)

C.  Ground three: _____

_____

Supporting FACTS (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

_____

D.  Ground four _____

_____

Supporting FACTS (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

_____

13.  If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: _____

_____

_____

_____

14.  Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
Yes ☐   No ☐

15.  Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
(a)  At preliminary hearing _____

_____

(b)  At arraignment and plea _____

_____

AO 241 (Rev. 5/85)

    (c)  At trial _____

_____

    (d)  At sentencing _____

_____

    (e)  On appeal _____

_____

    (f)  In any post-conviction proceeding _____

_____

    (g)  On appeal from any adverse ruling in a post-conviction proceeding _____

_____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
Yes ☐   No ☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐   No ☐
    (a)  If so, give name and location of court which imposed sentence to be served in the future: _____

_____

    (b)  Give date and length of the above sentence:_____

_____

    (c)  Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐   No ☐

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

_June 30 2003_.
      (date)

_Henry Peringui_
                  **Signature of Petitioner**

Appendix A

STATE OF WEST VIRGINIA

At a Regular Term of the Supreme Court of Appeals continued
held at Charleston, Kanawha County, on the 16th day of May, 1996, the following o
was made and entered:

State of West Virginia, Plaintiff
Below, Respondent

vs.) No. 951892

Henry C. Persinger, Defendant
Below, Petitioner

On a former day, to-wit, October 2, 1995, came the petitioner, He

C. Persinger, by Lee F. Benford, II, his attorney, and presented to the Court his peti

praying for an appeal from a judgment of the Circuit Court of Jackson County, rende

on the 1st day of March, 1995, with the record accompanying the petition. Thereaf

on the 29th day of November, 1995, came the petitioner, Henry C. Persinger, by Le

Benford, II, his attorney, and orally presented his petition praying for an appeal of

judgment, whereupon the Court assigned the matter to one of its staff attorneys

further review. Finally, on this date, came the staff attorney assigned to this matter

presented to the Court a thorough review of the petition and record.

Upon consideration whereof, is of the opinion to and doth her

refuse said petition for appeal.

A True Copy

Attest: _____

Clerk, Supreme Court of Appeals

RECEIVE

MAY 29 1996

**COPY**

IN THE

SUPREME COURT OF APPEALS

OF

WEST VIRGINIA

Charleston, West Virginia

---

STATE OF WEST VIRGINIA

Plaintiff Below, Respondent

vs.

HENRY CLAYTON PERSINGER

Defendant Below, Petitioner

---

APPEAL FROM JUDGMENT

RENDERED MARCH 1, 1995

FROM THE CIRCUIT COURT OF JACKSON COUNTY

---

PETITION OF THE DEFENDANT, Below

Filed by Counsel, Lee F. Benford II

IN THE CIRCUIT COURT OF JACKSON COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA,

        Plaintiff Below, Respondent,

vs.                                         Criminal Action No.: 94-F-17

HENRY CLAYTON PERSINGER,

        Defendant Below, Petitioner.

**THE PETITION OF HENRY CLAYTON PERSINGER
FOR WRIT OF ERROR AND SUPERSEDEAS OF A FINAL JUDGMENT
OF THE CIRCUIT COURT OF JACKSON COUNTY, WEST VIRGINIA**

TO THE HONORABLE SUPREME COURT OF APPEALS OF THE STATE OF WEST VIRGINIA:

**NATURE OF PROCEEDINGS**

Comes Petitioner, Henry Clayton Persinger, and states that he is aggrieved by the final judgment of the Circuit Court of Jackson County, West Virginia entered the 1st day of March, 1995, wherein Petitioner, upon jury verdicts of guilt, was sentenced to the penitentiary as follows:

1.      Upon his conviction of first degree sexual assault, a felony, as charged in the first count of the within indictment, for a period of not less than 15 nor more than 35

2

years;

2.    Upon his conviction of first degree sexual assault, a felony, as charged in the second count of the within indictment, for a period of not less than 15 nor more than 35 years;

3.    Upon his conviction of incest, a felony, as charged in the fifth count of the within indictment, for a period of not less than 5 nor more than 15 years; and,

4.    Upon his conviction of incest, a felony, as charged in the sixth count of the within indictment, for a period of not less than 5 nor more than 15 years; and it be further ordered that the aforesaid sentences imposed upon defendant for his convictions of the first and second counts of the indictment are to run concurrently with one another; further, that the sentence imposed upon the fifth count of the indictment shall run consecutive and not concurrent to the sentences imposed for the first and second counts of the indictment; further, that the sentence imposed upon the sixth count of the indictment shall run consecutive and not concurrent to the sentence imposed on the fifth count of the indictment.

## STATEMENT OF FACTS

During the June 1994 term of the Circuit Court of Jackson County, the Grand Jury returned a six (6) count felony indictment charging petitioner with two (2) counts of first degree sexual assault (W.Va. Code § 61-8B-3), two counts of sexual abuse by parent, guardian or custodian (W.Va. Code § 61-8D-5), and two (2) counts of incest (W.Va. Code § 61-8-12).

3

The investigation leading to this indictment began on or about February 22, 1994, when petitioner's five-year-old niece is reported to have disclosed to a school counselor that petitioner had certain sexual contact with her.

Your petitioner was first notified of these allegations on March 3, 1994, via an interview by an officer of the West Virginia State Police. The officer states in his report that the petitioner denied the allegations, but informed the officer that in November 1993 he had caught his niece and an older brother engaged in what appeared to be oral intercourse, which incident he reported to their mother.

The next day, on March 4, 1994, your petitioner, in the context of a polygraph examination conducted at the state police barracks, again initially denied the allegations. However, before petitioner left the state police barracks, the officers elicited a written incriminating statement from petitioner. During the suppression hearing pertaining to this statement, your petitioner testified that the incriminating statement was not true, but given out of fear after having been threatened and actually physically assaulted by the polygraph examiner, leaving marks on his neck and knots on his head. Petitioner's mother, who was present at the state police barracks during the polygraph examination, testified that she heard threats and sounds consistent with someone being struck. She also observed petitioner's dazed condition upon leaving the state police barracks, the marks on his neck and knots on his head. The trial judge ruled the confession could be admitted during the trial of the case. During the trial of the case before the jury, the State elected not to use the petitioner's statement.

4

During the trial, the State presented a case to the jury that the petitioner's niece was a victim of longstanding and repeated sexual abuse. Your petitioner attempted to advance a defense that agreed with the State's contention that his niece was indeed a victim of sexual abuse of a longstanding nature, but that he was not the perpetrator. Your petitioner further sought to admit evidence that showed the niece and her siblings to have been sexually abused for years by their mother and that said abuse had led the niece and her siblings to also become sexually active with each other. The trial court refused to allow any evidence whatsoever of the prior sexual conduct of the niece. Your petitioner has done a rather extensive vouch of the record on this issue for appellate review.

The trial court heard and ruled on several other motions before and during the trial of this case, many of which rulings are assigned as error hereinbelow.

### ASSIGNMENTS OF ERROR

1.    The Court erred in denying Defendant's Motion to Suppress his written statement.

2.    The Court erred in granting the State's Motion in Limine over Defendant's objection.

3.    The Court erred in denying Defendant's Motion in Limine.

4.    The Court erred in denying Defendant's Motion to Compel Exculpatory Evidence and Motion to Continue.

5.    The Court erred in not granting and requiring the State to fully comply with Defendant's Motion to Compel Exculpatory Evidence.

5

6. The Court erred in denying Defendant's Motion to Determine Competency of Witnesses.

7. The Court erred in ruling upon Defendant's Motion to Determine Competency of Witnesses without first allowing Defendant to adduce the testimony of the proposed child witnesses to the Court out of the presence of the jury.

8. The Court erred in granting the State's motion based upon the case of *State v. Jones* over Defendant's objection.

9. The Court erred in granting the State's motion based upon the case of *State v. Barker* over Defendant's objections.

10. The Court erred in refusing to grant Defendant's Motion to Strike for Cause from the jury panel juror Barbara Liegey and Sandra Reed.

11. The Court erred in ruling that State's witnesses, Keitha Graham, should be recognized as an expert in sexual abuse counseling.

12. The Court erred in ruling that the State's witness, Keitha Graham, should be recognized as an expert and allowed to testify in the same capacity as a psychologist.

13. The Court erred in limiting Defendant's cross-examination of witness, Keitha Graham, regarding prior statements of witness, Vince Ray.

14. The Court erred in allowing State's witness, Dr. Ernest Breitinger, to testify during the trial as to the identity of the alleged offender and as to the number and time of incidents, all of which were based on extra-judicial statements of the alleged victim.

15. The Court erred in denying Defendant's Motion for Judgment of Acquittal at the close of the State's case.

6

16.    The Court erred in denying Defendant's Motion after the testimony of Myrtle Ray for leave to present evidence as to prior sex acts testimony regarding the alleged victim.

17.    The Court erred in denying Defendant's Motion for Judgment of Acquittal after the close of the Defendant's evidence.

18.    The Court erred in denying Defendant's pre-trial Motion to Dismiss, challenging the sufficiency of the Indictment upon the grounds that the Indictment is defective upon its face, having omitted essential elements of the offenses purported to be charged therein.

19.    The Court erred in instructing the jury as to any offenses that the Defendant could be found guilty on, which objections were raised by the Defendant at the close of all of the evidence, for reason that the Indictment is facially deficient, having omitted essential elements of the offenses purported to be charged therein.

20.    The Court erred in giving State's Instruction Numbers 1, 2, 3 and all other instructions offered by the State all of which were given over Defendant's objections.

21.    The Court erred in instructing the jury that it could convict the Defendant on three separate crimes based on the same conduct, overruling Defendant's objection thereto on grounds of double jeopardy.

22.    The Court erred in allowing the State to use a chart in its closing statement, which use was objected to by the Defendant and was misleading to the jury inasmuch as it omitted essential elements of the offenses.

7

23.     The Prosecutor's remarks during closing argument to the affect that the Defendant was hiding behind the chart that the State had placed in front of the jury were improper and inflammatory and prejudicial to Defendant's right to a fair trial.

24.     The Assistant Prosecutor's statements to the jury during closing argument that Myrtle Ray wanted the defendant to be acquitted because then she would get her kids back were improper inasmuch as there was no such evidence before the jury to support such an argument and as a matter of law it is a misleading proposition that an acquittal would result in the return of the children to said Myrtle Ray.

25.     The Court erred in denying Defendant's post-trial Motion for Acquittal and/or New Trial and/or Arrest of Judgement.

26.     The Court erred in imposing an excessive sentence upon Defendant.

27.     The Court erred in denying Defendant's motions made upon imposition of sentence for stay of execution of sentence and release on bail pending appeal.

28.     The verdict was unsupported by the evidence or by the greater weight of the evidence.

29.     The verdict was contrary to law.

30.     For such other matters apparent to the Court or that may come to the attention of the Defendant upon review of the trial transcript.

## POINTS AND AUTHORITIES RELIED
## UPON AND DISCUSSION OF LAW

### Prior Sexual Conduct

The State made a Motion in Limine in this case, which the trial court granted, prohibiting your petitioner from introducing sexual activity of the victim with individuals

8

other than the petitioner.

Evidence of sexual activity of an alleged victim with individuals other than the accused is not as the State contended at trial clearly inadmissible. West Virginia Code § 61-8B-11 in pertinent part provides that "...such evidence shall be admissible solely for the purpose of impeaching credibility, if the victim first makes his previous sexual conduct an issue in the trial by introducing evidence with respect thereto."

Moreover, Rule 404(a)(3) of the West Virginia Rules of Evidence explicitly extends the permissible scope of such evidence in a 61-8B-11 prosecution. Such evidence is admissible in the case at bar pursuant to Rule 404(a)(3), which in pertinent part provides as follows:

> ...as to the victim's prior sexual conduct with persons other than the defendant, where the court determines at a hearing out of the presence of the jury that such evidence is specifically related to the act or acts for which the defendant is charged and is necessary to prevent manifest injustice.

In **State v. Green**, 163 W.Va. 681, 260 S.E.2d 257 (1979), the West Virginia Supreme Court of Appeals recognized that there are cases "where the probative value is precisely demonstrated and outweighs the prejudicial effect of the testimony..." and further that: "A statutory prohibition so broad that is forecloses cross-examination... denies a defendant his right to effectively confront his accuser."

In the case at bar, the trial court should have granted petitioner's Motion to Compel Disclosure of Witnesses and Motion for Continuance due to lack of timely disclosure by the State and conducted an in-camera hearing in regard to admissibility of Rule 404 evidence. The Motion to Compel Disclosure sought the identity of eyewitnesses known

9

to the State of prior sexual acts of the alleged victim with other persons. Such evidence should have been allowed in the defendant's case in chief in the case at bar based on the above cited authorities. Assuming, arguendo, that such evidence were admitted only for impeachment purposes it is still under the law viewed as exculpatory evidence which must be disclosed by the State. *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d (1972); *State v. Hoard*, 375 S.E.2d 582 (W.Va. 1988).

### Failure to Disclose Exculpatory Evidence

Trial counsel for the petitioner, pursuant to subpoena duces tecum, was on November 23, 1994, only six (6) days before trial, provided copies of certain records of the West Virginia Department of Health and Human Resources, which records are commonly referred to by said Department as "referrals". The actual copies furnished to counsel are attached as Exhibits 1, 2, 3, 4, 5, 6, 7, 8, 9 and 10 of the Motion to Compel Disclosure of Witnesses and Motion for Continuance.

The names of the persons making the above reports to said Department were redacted out of the copies furnished to counsel. Counsel requested that said names be disclosed, but was refused such disclosure. The trial court denied the motion to compel such disclosure. This denial violates the constitutional due process mandates set forth in *Brady v. Maryland*, 373 U.S. 83 (1963), and its successor cases.

The attached exhibits are reports pertaining to the alleged victim and her family. Given the content and nature of these reports, defendant should have been provided the identity of the reporter or reporters of these incidents and afforded an opportunity to investigate these reports and secure the present of such persons as witnesses on behalf

10

of the defendant for the trial of this case.

The above information was in the possession of and known to the State and should have been furnished to the petitioner, even without subpoena duces tecum or a motion therefor. The entire file containing said reports was in the actual possession of the Prosecuting Attorney's office several months before the trial of this case. In *Giles v. Maryland*, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967), the United States Supreme Court sets forth the duty of the prosecutor to disclose information as follows:

> If [the state] has in its exclusive possession specific, concrete evidence which is not merely cumulative or embellishing and which may exonerate the defendant or be of rational importance to the defense regardless of whether it relates to testimony which the State has caused to be given at trial... the State is obligated to bring it to the attention of the Court and the defense.

It is reversible error to fail to produce exculpatory evidence after it is requested. *Hall v. McCoy*, 329 S.E.2d 860 (W.Va. 1985).

In *Wilhelm v. Whyte*, 239 S.E.2d 735 (W.Va. 1979), the West Virginia Supreme Court of Appeals ruled that disclosure of exculpatory evidence must be made in a timely manner in order to be of value to the accused.

Lack of timely disclosure can usually be cured by a continuance, and a defendant's failure to request such a continuance can constitute a waiver of any error. *State v. Cunningham*, 209 S.E.2d 256 (W.Va. 1981). In the case at bar, defendant sought full

11

disclosure and a continuance, both of which motions were denied.

Pre-trial disclosure of the requested information is necessary if the rule of fairness contained in **Brady** is to be given any effect. Since "late disclosure would emasculate the effects of **Brady**", **United States v. Pollock**, 534 F.2d 964, 973 (D.C. Cir. 1976), disclosure "at trial... of **Brady** material is tantamount to the actual suppression of the material." **United States v. Thevis**, 84 F.R.D. 47, 56 (N.D. Ga. 1979).

In **Moore v. Illinois**, 408 U.S. 786 (1972), the United States Supreme Court emphasized that disclosure of **Brady** material is essential to assure and protect the rights of these defendants pursuant to **Brady**, its progeny, and the Sixth Amendment to the United States Constitution.

The existence of, and the substance of, all witness statements favorable to the defendants are properly subject to disclosure, **United States v. Wilkins**, 326 F.2d 135 (5th Cir. 1964); **Jackson v. Wainwright**, 390 F.2d 288 (5th Cir. 1968).

All evidence and information tending to affect adversely the credibility of any evidence or testimony used or to be used by the prosecution is properly subject to disclosure. **Thomas v. United States**, 343 F.2d 46 9th Cir. 1965).

Testimony and Records of Dr. Ernest R. Breitinger and Tracy Young, R.N.

Your petitioner moved in limine that the trial court prohibit Dr. Ernest R. Breitinger and Tracy Young, R.N., from presenting hearsay testimony identifying the petitioner as the perpetrator of sexual contact with the victim. Rule 803(4) of the West Virginia Rules of Evidence is controlling in regard to the extent to which Dr. Breitinger's testimony and records are admissible in the case at bar. Rule 803(4) states:

12

> *Statements for purposes of medical diagnosis or treatment.*
> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

This exception to the hearsay rule permits only admission of "statements made for the purpose of medical diagnosis or treatment". Therefore, any statement to the physician or contained in his records as to the identity of the defendant as a perpetrator is not admissible since the identity is not pertinent to diagnosis or treatment of the child. Seldom, if ever, will the identity of an individual be sufficiently related to diagnosis or treatment. **United States v. Iron Shell, supra; United States v. Nick**, 604 F.2d 1199 (9th Cir. 1979); Handbook on Evidence for West Virginia Lawyers (Cleckley), § 8-3(B)(4).

In the West Virginia case of **State v. Edward, Charles L.**, 183 W.Va. 641, 398 S.E. 2d 123 (1990), the Court allowed the testimony of a treating psychologist as to the identity of the person who allegedly committed a sexual assault upon a child and therein adopted a two-part test for admitting these type of hearsay statements as follows: (1) the declarant's motive in making the statement must be consistent with the purposes of promoting treatment; and, (2) the content of the statement must be such as is reasonably relied upon by a physician in treatment or diagnosis. The case at bar is clearly distinguishable from **Edward, Charles L.**, where the statements were made by children the psychologist was seeing in a therapeutic context. The Court reasoned that since the children therein were taken to a psychologist by their mother for the purpose of treatment at a time prior to any criminal action even being contemplated, the statements were found to be admissible. The case at bar, to the contrary, involves a medical sexual

13

assault examination performed pursuant to a request of the State as a part of a criminal and abuse and neglect investigation. In the context of this case, the evidence adduced through Dr. Breitinger and Tracy Young should have been limited to actual physical and objective medical findings and opinions and should have excluded the statements of the alleged victim. These statements do not meet the two-prong test of being consistent with the purposes of promoting treatment, nor are they necessary for the physician to rely upon in his treatment or diagnosis.

### Testimony of Keitha Graham

The trial court allowed the testimony of Keitha Graham, school counselor, as to allegations made by the alleged victim and her brother while talking with them in her job as counselor at Ripley Elementary School. Since such statements are hearsay and are not admissible under any exception to the hearsay rule, the State proffered her as an expert witness, apparently in an effort to avoid the obvious hearsay prohibitions regarding such testimony. The trial court, over petitioner's objection, recognized said witness as an expert in sexual abuse counseling and allowed her to testify in the same capacity as a psychologist. Even if such witness were qualified as an expert, her testimony should have been excluded by Rule 403 considerations. To allow such blatant hearsay testimony in evidence under the guise of "expert" testimony is unfairly prejudicial under Rule 403 and should not be permitted or condoned. The trial court also denied petitioner's request to exclude her testimony based on Rule 403.

### **RELIEF PRAYED FOR**

It is for all the aforesaid reasons recited herein, that the Petitioner respectfully

14

urges that this appeal be allowed and upon full review the judgment of the Circuit Court heretofore rendered and ordered be set aside and reversed.

HENRY CLAYTON PERSINGER,
By Counsel;

Lee F. Benford II

15

## CERTIFICATE OF SERVICE

I, LEE F. BENFORD II, Attorney for the Petitioner, Henry Clayton Persinger,

hereby certify that the foregoing **PETITION OF HENRY CLAYTON PERSINGER FOR**

**WRIT OF ERROR AND SUPERSEDEAS OF A FINAL JUDGMENT OF THE CIRCUIT**

**COURT OF JACKSON COUNTY, WEST VIRGINIA** was this day hand-delivered to David

K. Moore, Prosecuting Attorney for Jackson County, West Virginia, at his office in the

Jackson County Courthouse, Ripley, West Virginia.

Dated this 1st day of September, 1995.

Lee F. Benford II
PO Box 511
Ravenswood, WV 26164

16

Appendix B

# TABLE OF CONTENTS

### ISSUE ONE
PETITIONER ASSERTS HE WAS DENIED HIS RIGHT
TO A FAIR TRIAL WHEN THE TRIAL COURT ALLOWED
THE TESTIMONY OF OF THE STATES WITNES AS AN
EXPERT, WHICH  EXCEEDED PERMISSIBLE LIMITS  . . . . . . . . . . 5

### ISSUE TWO
PETITIONER CONSTITUTIONAL RIGHTS TO A
FAIR TRIAL WERE DENIED WHEN THE STATE
AND/OR ITS AGENTS FAILED TO DISCLOSE
THE REQUESTED EXCULPATORY EVIDENCE  . . . . . . . . . . . . . 6

### ISSUE THREE
PETITIONER WAS DENIED THE EFFECTIVE
ASSISTANCE OF COUNSEL WHICH DENIAL
CONTRIBUTED TO HIS CONVICTION AND,
CONSEQUENTLY, THE RIGHT TO A FAIR
TRIAL, AND DUE PROCESS OF LAW . . . . . . . . . . . . . . . 13

### ISSUE FOUR

WHETHER THE PETITIONER'S CONSTITUTIONAL RIGHTS
UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS
TO THE UNITED STATES CONSTITUTION AND ARTICLE III,
SECTION TEN OF THE WEST VIRGINIA CONSTITUTION WERE
VIOLATED AS A RESULT OF THE PROSECUTING ATTORNEY IN
HIS CLOSING ARGUMENT'S, MISSTATING CRUCIAL FACTS AND
STATING AS FACTS NOT IN EVIDENCE AND INFLAMING THE
JURY  . . . . . . . . . . . . . . . . . . . . . . . . . . 16

### ISSUE FIVE

PETITIONER CONTENDS THE STATE OF WEST VIRGNIA
FAILED TO MEET THE BURDEN OF PROOF REQUIRED BY
LAW, IN WHICH THE PROOF IS WHOLLY CIRCUMSTANTIAL
IN NATURE, THIS IS IN DIRECT VIOLATION OF THE
FOURTEENTH AMENDMENT TO THE UNITED STATES
CONSTITUTION AND UNDER ARTICLE III, SECTION 10
OF THE WEST VIRGINIA CONSTITUTION.  . . . . . . . . . . . . 20

### ISSUE SIX

PETITIONER ASSERTS HE WAS DENIED A
FAIR TRIAL DUE TO THE CUMULATIVE
EFFECT OF NUMEROUS ERRORS COMMITTED
DURING THE TRIAL OF THE PETITIONER  . . . . . . . . . . . . 23

FROM PUBLIC DEFENDER CORP 3043732417                              P.

## ISSUE SEVEN

PETITIONER ASSERTS HE WAS DENIED A
FAIR TRIAL DUE TO THE CUMULATIVE
EFFECT OF NUMEROUS ERRORS COMMITTED
DURING THE TRIAL OF THE PETITIONER . . . . . . . . . . . .  26

JURISDICTION  . . . . . . . . . . . . . . . . . . . . . .  1

KIND OF ACTION  . . . . . . . . . . . . . . . . . . . . .  1

PETITION FOR WRIT OF HABEAS CORPUS AD SUBJICIENDUM . . . . .  1

STATEMENT OF THE CASE  . . . . . . . . . . . . . . . .  3

STATEMENT OF THE FACTS  . . . . . . . . . . . . . . . .  4

## TABLE OF AUTHORITIES

CASES                                                      PAGES

In re Whinship,
     25 L.Ed 2d 368 (1970) . . . . . . . . . . . . . . .  21

Berger v. United States
     79 LEd 1314 (1935) . . . . . . . . . . . . . . . .  20

Brady v. Maryland,
     377 U.S. 83 (1963) . . . . . . . . . . . . . . . .  8

Crandon v. United States,
     108 L.Ed.2d 132, 140 (1990) . . . . . . . . . . .  22

Gibson v. Dale,
     319 S.E. 2d 806 (W.Va 1984) . . . . . . . . . . . .  2

Giglio v. United States,
     31 L.Ed.2d (1972) . . . . . . . . . . . . . . . .  7

Giles v. Maryland,
     17 L.Ed.2d (1967) . . . . . . . . . . . . . . . .  9

Gomez v. Beto,
     498 F.2d 1360 (1977) . . . . . . . . . . . . . . .  14

Halstead v. Horton
     38 W.Va 727 (1894) . . . . . . . . . . . . . . . .  25

Jackson v. Virginia,
     61 L.Ed 2d 560 (1979) . . . . . . . . . . . . . . .  21

Append ix (C)

# TABLE OF CONTENTS

I. KIND OF PROCEEDING AND NATURE OF RULING BELOW . . . . . . . . . . 1

II. STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. ASSIGNMENTS OF ERROR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV. POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

V. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    1. The Court erred by disregarding newly discovered evidence relating to the qualification of Dr. Breitinger. . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    2. The trial court's failure to allow the Petitioner to introduce evidence of specific acts of prior sexual abuse by others constituted a "manifest injustice", violating the Petitioner's right to a fair trial guaranteed by the Fourteenth Amendment to the United States Constitution and by Article. III, Section 10 of the Constitution of West Virginia. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    3. The State's Failure to disclose certain exculpatory evidence before trial deprived the Petitioner of his right to Due Process guaranteed by the Sixth Amendment to the U. S. Constitution and by Article III, Section 10 of the West Virginia Constitution.
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# JACKSON COUNTY CIRCUIT COURT
## DOCKET

### PLAINTIFF vs. DEFENDANT

FILE NO. 203 (95)

CASE NO. 97-C-53

ACTION ___ Writ Habeas Corpus ___

TRIAL BY ___

Jerry Prorger

Pro se

George Trent Walden

**ATTORNEYS**

| DATE | PROCEEDINGS | ORDER Book | Page | D P | CASH BOOK FOLIO | CLERK'S FEES | OTHER FEES | DEPOSITS COLLECTED | DEPOSITS APPLIED REFUNDED |
|---|---|---|---|---|---|---|---|---|---|
| 4/9/97 | Petition filed for Habeas Corpus | | | | | | | | |
| | Exhibits filed | | | | | | | | |
| 6/4/97 | Order for Jackson Co Transferring to Cir Ct Judge | 62 | | | | | | | |
| 7/1/97 | Order - Screening | | 774.8 | | | | | | |
| 7/2/97 | Notice & intent to appeal Screening bill of relief previous | | | | | | | | |
| 7-29-97 | Order Appointing Public Defender as plf atty | 74 | 116 | | | | | | |
| 11-7-97 | Motion for enlargement of time filed by atty Cook | | | | | | | | |
| 11-7-9 | Order - Motion Granted | 74 | 522 | | | | | | |
| 12-23-97 | Motion for enlargement of time filed by atty directly B.W. Cook | | | | | | | | |
| 12-22-97 | Order - Extended time to file appeal until 1-31-98 filed | 74 | 749 | | | | | | |
| 2/98 | Appeal to Sup Ct | | | | | | | | |

| DATE | PROCEEDINGS | D P | ORDER Book | Page | CASH BOOK FOLIO | CLERK'S FEES | OTHER FEES | DEPOSITS COLLECTED | DEPOSITS APPLIED OR REFUNDED |
|---|---|---|---|---|---|---|---|---|---|
| 4/3/98 | Sup. court Order — cert 8/3/78 | | 75 | 590 | | | | | |
| 6/9/98 | Order — Sheriff to transport dft 8/3/98 | | 75 | 462 | | | | | |
| 8-3-98 | Affirmation & Notification of Last Amended Motion - Proposed Order filed by atty Bentti | | | | | | | | |
| 8-3-98 | Adv — Cert 11-5-98 filed | | 76 | 27 | | | | | |
| 9/10/98 | Motion to Cert + for enlargement of time filed by atty Bentti | | | | | | | | |
| 9-10-98 | Motion to withdraw as Counsel filed by atty Bentti | | | | | | | | |
| 9-21-98 | Order allowing atty Bentti as counsel | | 76 | 267 | | | | | |
| 11/10/98 | Letter from Pl to Dfts filed | | | | | | | | |
| 11/2/99 | Letter from Pl to Kenneth Britt filed | | | | | | | | |
| 11/10/99 | Letter to Pl from Clerk Release Form filed | | | | | | | | |

```
FUNCTION = INQUIRE                                              CASE SCREE
     Case number : 97-C-176                          Action Log
          HENRY PERSINGER                    vs. GEORGE TRENT, WARDEN MOCC
Line   Date                    Action / Results
   1 05/07/97 PETITION FOR WRIT OF HABEAS CORPUS FILED;
   2 05/07/97 AFFIDAVIT OF INDIGENCY FILED;
   3 05/07/97 APPLICATION FOR APPOINTMENT OF COUNSEL FILED;
   4 05/07/97 EXHIBITS IN SUPPORT OF PETITIONER'S WRIT OF HABEAS CORPUS;
   5 05/14/97 SERVICE - SECRETARY (JUDY COGAR)
   6 05/16/97 RETURN
   7 06/06/97 TRANSFER ORDER (RE: TO JACKSON COUNTY CIRCUIT COURT)  --  FINAL




     C=Chg  D=Del  1-4=Scr  M=Menu  T=Chg Line#  PgUp PgDn P=Prt A=Add I=Image
```