## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION



**HENRY PERSINGER,**

    *Petitioner,*

v.                           **CIVIL ACTION NO. 5:03-0618**

**THOMAS McBRIDE, Warden,**
**Mount Olive Correctional Complex,**

    *Respondent.*

---

### RESPONDENT'S MOTION FOR SUMMARY JUDGMENT
### AND MEMORANDUM IN SUPPORT THEREOF

---

                            **DARRELL V. McGRAW, JR.**
                            **ATTORNEY GENERAL**

                            **JON R. BLEVINS**
                            **ASSISTANT ATTORNEY GENERAL**
                            **STATE BAR NO. 6999**
                            **STATE CAPITOL, ROOM 26-E**
                            **CHARLESTON, WEST VIRGINIA 25305**
                            **(304) 558-2021**

                            *Counsel for Respondent*

# TABLE OF CONTENTS

Page

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  STATEMENT REGARDING EXHAUSTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  TRANSCRIPTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

V.  MOTION AND ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.  THE RESPONDENT IS ENTITLED TO SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        1.  The Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        2.  General Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B.  THE PETITIONER HAS RAISED CLAIMS WHICH ARE NOT COGNIZABLE IN FEDERAL HABEAS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        1.  The Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        2.  Alleged Violations of State Law Are Not Cognizable . . . . . . . . . . . . . . . 7

    C.  THE PETITIONER'S CLAIMS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND FURTHER FAIL AS A MATTER OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        1.  Trial Court Error Is Not Cognizable in Federal Habeas Nor Did the Trial Court Err in Denying the Petitioner's Motion for a New Trial Based on Newly Discovered Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        2.  The Petitioner's Claim of Error in a Trial Court Evidentiary Ruling Is Not Cognizable . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        3.  No Exculpatory Evidence Was Withheld From the Defense at Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

VI.  GENERAL DENIAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

VII.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

**HENRY PERSINGER,**

    *Petitioner,*

v.                                                 **CIVIL ACTION NO. 5:03-0618**

**THOMAS McBRIDE, Warden,**
**Mount Olive Correctional Complex,**

    *Respondent.*

---

### RESPONDENT'S MOTION FOR SUMMARY JUDGMENT
### AND MEMORANDUM IN SUPPORT THEREOF

---

### I.

### INTRODUCTION

Henry Persinger (hereinafter "the Petitioner") filed the present federal petition for writ of habeas corpus under 28 U.S.C. § 2254 on July 3, 2003. By order entered October 24, 2003, the Honorable R. Clarke VanDervort, United States Magistrate Judge, directed the Respondent to answer the Petition. On December 2, 2003, the Respondent filed a Motion to Dismiss for Failure to Timely File and Memorandum in Support Thereof pursuant 28 U.S.C. § 2244(d)(1). On September 8, 2004, this Court adopted the Findings and Recommendations of the Honorable R. Clarke VanDervort, Unite States Magistrate Judge, and denied the Respondent's motion to dismiss.

Respondent, by counsel, now moves this Court to dismiss the present federal petition on the grounds that the petition has failed to state claims upon which relief can be granted, and, further, the Respondent is entitled to judgment as a matter of law.

The Respondent further incorporates by reference the procedural history and exhibits contained therein, set forth in the previously filed Motion to Dismiss.

## II.

## STATEMENT OF FACTS

The Petitioner, during a period of time when his sister's family was staying at his mother's home where he was also residing, sexually assaulted his then five-year-old niece Mindy Adams. According to the testimony of Mindy Adams, the Petitioner penetrated her vagina with his penis, "He put his dingdong in me." (Resp't Ex. 9 at 168.)  The attacks against Mindy Adams were witnessed and testified to by her brothers who were in the same room at the time. (*Id.* at 174.)  The children told family members of the attacks, but according to the testimony of Mindy Adams's brother Vince (age seven at the time of trial) he was "whipped" by his uncle after telling family members about the attacks against his little sister.  (*Id.* at 192.)  The victim's brother also testified that his mother and grandmother only instructed the Petitioner to "quit it," but took no other action to stop the abuse and the attacks continued.  (*Id.*)  Mark Ray, the brother of the victim, age 12 at the time of the trial and a witness to the crimes, testified that he witnessed the Petitioner inserting his

fingers into his the victim's vagina.  (*Id.* at 206.)[1]  Mark also testified that his mother told Vince (his

and the victim's brother) not to tell authorities what the Petitioner had done.  (*Id.* at 209.)

Keitha Graham, the counselor at the children's school, testified that on February 22, 1994,

Mindy was sent to her for behavioral problems and during the course of the counseling session,

revealed that the Petitioner touched her "with his dingdong . . . and it hurt very, very much."  (*Id.* at

260.) During the course of the therapy, the victim told Ms. Graham, with the help of anatomically

correct dolls, that the Petitioner also digitally penetrated her vagina and touched it "sometimes . . .

outside [and] sometimes . . . inside and it did not hurt as much as when the dingdong went inside

her."  (*Id.*)

Dr. Ernest R. Breitinger, M.D., the States's medical expert,  testified that the victim Mindy

Adams manifested physical evidence of sexual abuse such as scarring, dilation and stretching of

Mindy's genitalia. (*Id.* at 297-299.)  The Petitioner testified at trial in his own defense.

## III.

## STATEMENT REGARDING EXHAUSTION

"An application for a writ of habeas corpus in behalf of a person in custody pursuant to the

judgment of a State court shall not be granted unless it appears that the applicant has exhausted the

remedies available in the courts of the State[.]" 28 U.S.C. § 2254(b). In West Virginia, a prisoner

may exhaust state remedies by either direct appeal, *Moore v. Kirby*, 879 F. Supp. 592, 593 (S.D.

---

[1]Aside from the children's wrenching testimony about the sexual abuse committed by the Petitioner, they testified to a life of tragic depravation and neglect. They suffered injuries, had no hot water or heat, received no presents at Christmas, and were abused routinely by many family members.  In a DHHR report included in the record, the case worker noted that when she arrived at the home, the children were covered with sores,  It is sadly clear from the children's testimony that they lived in a family culture of physical and  sexual abuse which was condoned by other family members who told the children not to report the abuse.

W. Va. 1995), or by filing a petition for a writ of habeas corpus in a state circuit court pursuant to West Virginia Code § 53-4A-1, followed by a petition for appeal of any adverse ruling to the Supreme Court of Appeals. *Bayerle v. Godwin*, 825 F. Supp. 113, 114 (N.D. W. Va. 1993). As demonstrated by the Procedural History, the Petitioner has had a full round of opportunity to properly present his claims to the appropriate courts. The Petitioner has fully exhausted his claims, part in his direct appeal and part in his habeas appeal.

The Respondent however, reserves the right to assert non-exhaustion should the evidence or legal grounds subsequently developed herein differ in any material respect from those presented in previous State court proceedings.

## IV.

## TRANSCRIPTS

The Petitioner's trial transcript is included herein as Respondent's Exhibit 9.

The transcripts contained in the record made available to the Respondent and available on request are the following:

1. June 28, 1994 - Grand Jury testimony.

2. November 17, 1994 - Pre-trial hearing.

3. November 21, 1994 - Pre-trial hearing.

4. December 13, 1994 - Post-trial motions.

5. March 17, 1995 - Hearing vouching the record.

6. July 10, 1995 - Hearing vouching the record.

V.

**MOTION AND ARGUMENT**

**A.      THE RESPONDENT IS ENTITLED TO SUMMARY JUDGMENT.**

      1.      **The Standard of Review.**

In order to demonstrate that he is entitled to federal habeas relief, the Petitioner must demonstrate that he is in custody in "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Wainwright v. Goode*, 464 U.S. 78, 83 (1983) (per curiam) ("It is axiomatic that federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension.").

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  There is no genuine issue of material fact with respect to the Petitioner's claims, and the Respondent is entitled to summary judgment as a matter of law.

      2.      **General Standard.**

The standard of review for a state court's legal conclusion is spelled out in 28 U.S.C. § 2254, which provides that a federal court may not grant habeas relief to a petitioner:

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

5

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) & (2).

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court held that under the "contrary to" test, a federal habeas court may grant a writ of habeas corpus with respect to claims adjudicated on the merits in state court only if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) if the state court decides a case differently from the Supreme Court on a set of materially indistinguishable facts. *See Williams*, 529 U.S. at 412-13. The Court went on to note that under the "unreasonable application" test, a federal habeas court may grant a writ of habeas corpus with respect to claims adjudicated on the merits in state court if the state court identifies the correct governing principle from the Supreme Court's decision, but unreasonably applies that principle to the facts of the prisoner's case. *See id.* at 413.

Moreover, the statute directs that the factual findings of a state court are entitled to a presumption of correctness:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

Thus, claims which have been adjudicated on the merits in state court proceedings are subject to this heightened standard of review.

6

**B.    THE PETITIONER HAS RAISED CLAIMS WHICH ARE NOT COGNIZABLE IN FEDERAL HABEAS.**

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted, the Court must accept as true all well-pleaded material factual allegations. *Advanced Health-Care Services, Inc. v. Radford Community Hospital*, 910 F.2d 139, 143 (4th Cir. 1990). Dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

### 1.    The Standard of Review.

In order to demonstrate that he is entitled to federal habeas relief, the Petitioner must demonstrate that he is in custody in "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Wainwright v. Goode*, 464 U.S. 78, 83 (1983) (per curiam) ("It is axiomatic that federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension.")

### 2.    Alleged Violations of State Law Are Not Cognizable.

Violations of state law and procedure which do not infringe specific federal constitutional protections are not cognizable under § 2254. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law

7

questions."); *Weeks v. Angelone*, 176 F.3d 249, 262 (4th Cir. 1999) ("Therefore, when a petitioner's claim rests solely upon an interpretation of state case law and statutes, it is not cognizable on federal habeas review."). Because an alleged violation of state law cannot form the basis of federal habeas corpus relief, Ground one and two of the petition should be dismissed for failure to state a claim cognizable in federal habeas corpus proceedings.

C.    **THE PETITIONER'S CLAIMS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND FURTHER FAIL AS A MATTER OF LAW.**

1.    **Trial Court Error Is Not Cognizable in Federal Habeas Nor Did the Trial Court Err in Denying the Petitioner's Motion for a New Trial Based on Newly Discovered Evidence.**

The Petitioner claims in ground one that the trial court erred by "disregarding newly discovered evidence" about the qualifications of State's expert Dr. Breitinger, and denying the Petitioner's motion for a new trial. (Pet. at 5.)

Dr. Breitinger, M.D., was the State's medical expert who was called at trial to testify about the results of the victim's physical examination. Dr. Breitinger testified at trial that the victim exhibited physical signs consistent with the sort of sexual abuse committed against her by the Petitioner. According to the present petition (Petitioner cites to "Defendant's Exhibit 21") it was later revealed that Dr. Breitinger had been requested by medical licensing officials to submit to a psychiatric examination and had other conflicts with the licensing board. The Petitioner does not claim that Dr. Breitinger was not licensed to practice medicine at the time of trial. The Petitioner does not claim that Dr. Breitinger's testimony was wrong. The Petitioner fails to explain how this information discovered about Dr. Breitinger after the trial effected the fairness of the trial or how

8

another trial would have resulted in an acquittal had the trial court granted the defense's motion for a new trial based upon newly discovered evidence.

*     *     *     *     *

As with all motions filed during the process of trial, the state trial courts are vested with substantial discretion in deciding whether or not to grant a motion for a new trial. [2]  In reviewing a habeas petition, the federal court is limited to deciding whether a conviction has violated the Constitution, laws, or treaties of the United States. *Estelle*, 502 U.S. at 62.  Errors in application of state law are usually not cognizable in a federal habeas corpus court.  Absent a showing of fundamental unfairness it is not the province of federal courts to interpret application of state law. (*Id.*)  Therefore, absent such a showing , this claim fails to raise a claim cognizable in federal habeas and should be dismissed..

In the alternative, this claim is meritless.  In order to prevail on this issue  the Petitioner must prove that Dr. Breitinger's testimony rendered the trial fundamentally unfair.  Further, the Petitioner must demonstrate that had the  "newly discovered evidence" been available at trial, the trial would

---

[2]Rule 33 of the West Virginia Rules of Criminal Procedure states:

> The court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice.  If trial was by the court without a jury the court on motion of a defendant for a new trial may vacate the judgment if entered, take additional testimony, and direct the entry of a new judgment.  A motion for a new trial based on the ground of newly discovered evidence may be made only after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case.  A motion for a new trial based on any other grounds shall be made within ten days after verdict or finding of guilty or within such further time as the court may fix during the ten-day period.

9

have resulted in an acquittal or that a re-trial incorporating the "newly discovered evidence" would

resulted in an acquittal. In West Virginia, the criteria for granting a new trial is, *inter alia*, that: "The

evidence must be such as ought to produce an opposite result at a second trial on the merits." *State*

*v. Frazier*, 253 S.E.2d 534 (W. Va. 1979), *quoting Halstead v. Horton* 18 S.E. 953 (1894). The

Petitioner, however, fails to demonstrate how a re-trial would result in an acquittal. If there was in

fact a re-trial, Dr. Breitinger would, in all likelihood, not be called to testify by the State. In a re-

trial, the State would call another expert who would likely testify to the same results as Dr.

Breitinger. The Petitioner does not state otherwise and nowhere in the argument in support of this

claim does the Petitioner claim that Dr. Breitinger's testimony was false, fabricated, inaccurate or

plainly wrong. Likewise, the Petitioner fails to successfully argue that the "newly discovered

evidence" would overcome the strong evidence of guilt presented in this case which was no less than

direct victim testimony, as well as that of two eye-witnesses.

Further, state courts have universally held that a new trial will not be had if the purpose of

the newly discovered evidence is to discredit or impeach the opponent's witness. *See, e.g., State v.*

*Helmick*, 495 S.E.2d 262 (W. Va. 1997); *State v. Hamric*, 151 S.E.2d 252 (W. Va. 1966); *State v.*

*Blasus*, 445 N.W.2d 535 (Minn. 1989); *State v. Rhodes*, 657 N.W.2d 823 (Minn. 2003); *see also*

*Nelson v. Mueller*, 533 P.2d 383 (Wash. 1975). *Accord Herrera v. Collins*, 506 U.S. 390, 408

(1993).

The Petitioner has failed to demonstrate that the "newly discovered evidence" would have

significantly altered the outcome of the trial or that Dr. Breitinger's testimony was prejudicial to the

outcome of the trial. The Petitioner has not demonstrated this nor even argued it. Moreover, the

Petitioner has not successfully proven that the trial court abused its discretion in denying the motion

10

for a new trial. One fair trial is all that is allowed by the Constitution. "The Constitution itself, of course, makes no mention of new trials." *Herrera v. Collins*, 506 U.S. 390, 408 (1993). The decision of the state court in not granting the new trial was not an unreasonable determination of the facts which resulted in a fundamentally unfair trial. Therefore, this claim fails.

Following a cogent and detailed analysis of the prevailing law on the issue of newly discovered evidence, the habeas court concluded in part:

> A review of the record leaves the court with a firm belief that the results of a second trial, with or without the testimony of Dr. Breitinger, would be the same. At the time of trial, Dr. Breitinger was a licensed medical doctor, and he was clearly qualified to testify as an expert medical witness. Even if the newly discovered evidence impeached Dr. Breitinger, the court fails to see how the result would be different, especially since the doctor was not the sole witness for the government upon whose testimony the petitioner's conviction rest. Since the court finds three of the necessary elements have not been proven by a preponderance of the evidence, this ground for habeas corpus relief fails as a matter of law.

(Resp't Ex. 7 at 6.)

The Petitioner has not established that his due process rights were violated. Therefore, the Petitioner has failed to show that his conviction is contrary to or involved an unreasonable application of established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented at the state court proceedings.

## 2.  The Petitioner's Claim of Error in a Trial Court Evidentiary Ruling Is Not Cognizable.

The Petitioner claims in ground two that the trial court erred in ruling that evidence of the victim's sexual abuse by others was inadmissible constituted "manifest injustice" which rendered his trial a violation of the Fourteenth Amendment right to a fair trial. (Pet. at 11.)

11

Prior to trial in this matter, the trial court heard arguments from the defense and the State on what evidence of the victim's other episodes abuse would be admissible at trial. (Resp't Ex. 9 at 49 - 78.) Following arguments, on the matter, the State agreed to stipulate that the victim had been subject to prior abuse. (*Id.* at 64-66, 75-78.) The trial court ruled that the defense was not to question the victim directly about prior abuse nor attempt to impeach her testimony with evidence of past sexual abuse: "We're not going to turn this thing into a charade or carnival as to what she admits to or with whom. I just can't." (*Id.* at 71.) The Court further also noted that "I could see why it could be very important for the jury to know that this child had been the victim of something or that there had been some sexual act before that could account for the hymeneal - - or the breaking of the hymeneal ring." (*Id.*). The State agreed to stipulated to the evidence and to "elicit testimony from one or more witnesses that there's reason to believe that individuals other than [the Petitioner] may have been involved in sexual activity wit this child and may have penetrated her vaginal area." (*Id.* at 75.)

Although the trial court would not allow the defense to try to impeach the testimony of a five-year-old victim with evidence of prior sexual abuse, it did allow and provide for the State to stipulate to the victim's prior abuse.

\* \* \* \* \*

The admission of evidence does not state a claim cognizable in habeas corpus unless it is accompanied by "circumstances impugning fundamental fairness or infringing specific constitutional protections." *Grundler v. North Carolina*, 283 F.2d 798, 802 (4th Cir. 1960.) The very narrow limits of fundamental unfairness in federal habeas were recognized by the United States Supreme Court in *Estelle v. McGuire*, 502 U.S. at 73:

12

[W]e "have defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling v United States*, 493 US 342, 352, 107 L Ed 2d 708, 110 S Ct 668 (1990). "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." Ibid.

On federal habeas review, the objective is not to determine whether the state trial court properly admitted evidence according to the state rules of evidence, or improperly excluded evidence. The inquiry is limited only to a determination of whether the an evidentiary ruling denied the Petitioner a fundamentally fair trial. *Milone v. Camp*, 22 F.3d 693, 702 (7th Cir. 1994) ("The standard, then, is not whether the testimony satisfied the *Frye* or *Daubert* tests--neither of which purports to set a constitutional floor on the admissibility of scientific evidence--but rather is whether the probative value of the state's evidence was so greatly outweighed by its prejudice to Milone that its admission denied him a fundamentally fair trial."); *Moore v. Tate*, 882 F.2d 1107,1109 (6th Cir. 1989) ("Thus, in passing upon the instant habeas petition, we do not purport to decide whether the state trial court's evidentiary ruling was correct. Rather, our inquiry is limited to determining whether that ruling denied Moore a constitutionally guaranteed right.").

Prior to trial, the defense and the State stipulated that the victim had been sexually abused by someone else in addition to the Petitioner. [3] (Resp't Ex. 9 at 329.) Indeed, State's expert Keitha Graham acknowledged that the victim had indicated episodes of prior abuse. (*Id.* at 278.) . Moreover, there was testimony that indicated that the victim came from a familial culture of abuse and neglect. Keitha Graham testified that "Mindy told me that the people in her family was aware of [the abuse]

---

[3]The record is replete with evidence that the victim and her siblings had a history of being profoundly neglected and sexually abused by a variety of family members and were sexually active among themselves because of their distorted upbringing. Judging from the indifference (indeed, the children were "whipped" for telling) of the Petitioner's mother and uncle after the children sought their help it would appear that child sexual abuse is an accepted pattern of behavior in the Petitioner's family.

13

but she was not allowed to tell . . . anyone outside the family." (Resp't Ex. 9 at 262.)  The jury was offered testimony from which it could have surmised that the Petitioner's family is one where the sexual abuse of children is not the abomination it is in society at large but is cultural and generational. Therefore, any history of prior sexual abuse of the victim would be consistent with the evidence given at trial.  Moreover, the prior sexual abuse of the victim had no bearing on the Petitioner's guilt nor did it cast doubt on his guilt.

The victim testified, as did two witnesses, to the abuse. The State stipulated to the past sexual abuse of the victim Therefore, any limitation on evidence of the victim's prior sexual abuse prior to the rape shield statue did not call into question the fairness of the trial in this matter.  The Petitioner has failed to demonstrate that the trial court's ruling impugned the "fundamental fairness" of his trial or infringed upon "specific constitutional protections" as required to raise an issue cognizable in federal habeas.  *Grundler*, 283 F.2d at 802.

The habeas court found:

> This court finds that the evidence sought to be introduced by the petitioner was generally inadmissible pursuant to the "rape shield" statute, W.Va. Code 61-8b-11(b) (2000). The court agrees with the State that the evidence lacked probative value in determining the guilt or innocents of the petitioner. Also, any prejudice that the petitioner suffered y its exclusion was almost surely entirely neutralized by the introduction of the stipulation advising the Jury that the victim had been sexually abused by someone other than the defendant prior to Christmas, 1993, the period of time that the State charged that the petitioner committed the instant offenses. Based on the above finding, the court finds that the petitioner is not entitled to habeas relief on this ground. (Resp't Ex. 7 at 7-8.)

The habeas court's ruling was neither contrary to nor an unreasonable application of clearly-established federal law. This claim also fails to raise an issue cognizable in federal habeas. It should be dismissed.

14

3.     **No Exculpatory Evidence Was Withheld From the Defense at Trial.**

The Petitioner claims in ground three that the State failed to disclosed certain exculpatory

evidence before trial. (Pet. at 15.)

The Petitioner claims that certain records pertaining to improper sexual activity of the

children before they visited his home during the time frame of the crimes were withheld by the State

until six days before the trial. The Petitioner further claims that when the records were provided they

were redacted in certain parts and the trial court refused to continue the trial until the redacted

information was provided. The Petitioner does not, however, explain how this information was

exculpatory or even probative nor does the Petitioner explain how this episode effected the outcome

of the proceedings against him.

> Brady teaches us that the prosecution deprives a criminal defendant of due
> process when it suppresses evidence that is "favorable to an accused . . . where the
> evidence is material either to guilt or to punish, irrespective of the good faith or bad
> faith of the prosecution." *Brady*, 373 U.S. at 87, 83 S.Ct. 1194. It is the petitioner's
> burden, see *United States v. Stokes*, 261 F.3d 496, 502 (4th Cir.2001), to establish
> the three elements of a *Brady* violation: (1) "[t]he evidence at issue must be
> favorable to the accused"; (2) the "evidence must have been suppressed by the State,
> either willfully or inadvertently"; and (3) the evidence must be material, i.e.,
> "prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct.
> 1936, 144 L.Ed.2d 286 (1999); see *Spicer v. Roxbury Corr. Inst.*, 194 F.3d 547, 555
> (4th Cir.1999). We conclude that the decision of the state court was neither
> unreasonable nor contrary to law. Even assuming the evidence at issue qualified as
> favorable to Fullwood, he failed to establish the other two components of a *Brady*
> claim.

*Fullwood v. Lee* 290 F.3d 663, 687 (4th Cir. 2002).

In this instance, the State did not suppress the challenged evidence. The Petitioner has not

demonstrated that the evidence was material to his guilt or innocence nor that it was "favorable" to

is defense. (*Id.*) The Petitioner has further failed to argue how he was prejudiced by the State's

15

delay in providing the evidence and how the outcome of the trial could have been altered had it been divulged earlier. Although the Petitioner argues that the information prevented the defense "learning about critical evidence namely that the children had been reported as having engaged in inappropriate sexual behavior before moving to Jackson County. . ." the Petitioner fails to explain how this evidence was material to his defense. (Pet. at 16.)

> Under *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481, four aspects of materiality for Brady purposes bear emphasis. First, favorable evidence is material, and constitutional error results from its suppression by the government, if there is a "reasonable probability" that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.

*Kyles v. Whitley* 514 U.S. 419 (1995).

Irrespective of the fact that the State did not withhold the challenged evidence, it was not material for purposes of establishing a *Brady* claim, particularly in light of the strong evidence of guilt presented at trial. Moreover, any evidence of "inappropriate sexual behavior" exhibited by the children or testimony to that effect from witnesses to the behavior would be no more than consistent with the behavior of profoundly abused and neglected children as testified to by Keitha Graham at trial.

Insofar as a claim that the trial court erred in not granting the defense's motion to continue, the Petitioner has failed to demonstrate that he was prejudiced by the trial court's refusal to grant the motion.

> In assessing the Continuance claim, we must first identify the legal standards applicable to a defendant's contention that a trial court violated the Constitution in refusing to grant a continuance. A defendant must satisfy two elements in order to secure relief on such a claim. First, he must establish that the trial court "abused its discretion" in denying his continuance motion. *Ungar v. Sarafite*, 376 U.S. 575, 588-89, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964); *Morris v. Slappy*, 461 U.S. 1, 11, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). Although a "matter of continuance is

16

traditionally within the discretion of the trial judge," a trial court is not entitled to deny a continuance because of a "myopic insistence upon expeditiousness in the face of a justifiable request for delay." *Ungar*, 376 U.S. at 589, 84 S.Ct. 841. Second, to be entitled to relief, the defendant must establish that the trial court's erroneous ruling prejudiced his defense. *United States v. Colon*, 975 F.2d 128, 130-31 (4th Cir.1992).

*Hill v. Ozmit*, 339 F.3d 187, 196-197 (4th Cir. 2003).

The Petitioner has failed to demonstrate that the State withheld evidence in violation of *Brady v. Maryland*. Without making this showing, the Petitioner cannot satisfy the first prong of the analysis set forth by the Fourth Circuit in *Hill, supra*. Moreover, the Petitioner does not successfully argue that had the court granted the continuance, significant information would have been revealed from further investigation of the challenged evidence which would have significantly bolstered the defense and resulted in acquittal nor has the Petitioner argued that the trial court's denial of the motion was "myopic insistence upon expeditiousness in the face of a justifiable request for dely." *Hill, supra*. For the defense to call witnesses who claimed to have witnessed the children involved in inappropriate sexual conduct among themselves may even have bolstered the prosecution as behavior consistent with profound neglect and sexual abuse. Therefore, the Petitioner fails to satisfy the prejudice prong on *Hill, supra*.

The habeas court found:

> The court finds no due process violation since the DHHR records were disclosed by the State prior to trial. Further, the court finds that the petitioner was not materially prejudiced by the denial of his motion for a continuance. The petitioner also claims that disclosure of the names of persons reporting the inappropriate sexual behavior of Mindy and her siblings should have been disclosed to the petitioner. The court disagrees since the relevant, material information was disclosed before trial, the court properly respected the anonymity of persons reporting the behavior.

(Resp't Ex. 7 at 8.)

17

The habeas court's findings did not run contrary to nor were they a misapplication of the controlling federal precedent set forth on this matter by *Brady* and its progeny.  This claim fails to state claim upon which relief can be granted, even assuming all facts are true and well pleaded.  It should be dismissed.

## VI.

## <u>GENERAL DENIAL</u>

Respondent denies generally that any violation of the Petitioner' rights has occurred.  Should this Court determine that this matter is not ripe for summary adjudication,  Respondent reserves the right to present further evidence and argument in opposition to the Petitioner' claims at such time and place as the Court may direct.

18

## VII.

## __CONCLUSION__

The Petitioner has failed to demonstrate that his confinement is imposed in contravention of

the rights and protections guaranteed under the Constitution, laws or treaties of the United States.

For the foregoing reasons, Respondent requests that the petition be dismissed with prejudice, and

that the relief sought by Petitioner be denied.

Respectfully submitted,

THOMAS McBRIDE, Warden,
Mount Olive Correctional Complex,

*Respondent*,

by counsel,

DARRELL V. McGRAW, JR.
ATTORNEY GENERAL

JON R. BLEVINS
ASSISTANT ATTORNEY GENERAL
State Bar No. 6999
State Capitol, Room 26-E
Charleston, West Virginia 25305
(304) 558-2021

19

## CERTIFICATE OF SERVICE

I, JON R. BLEVINS, Assistant Attorney General and counsel for Respondent, do hereby certify that I have served a true copy of the foregoing Respondent's Motion for Summary Judgment and Memorandum in Support Thereof upon Petitioner by depositing said copy in the United States mail, with first-class postage prepaid, on this 29th day of September, 2004, addressed to him as follows:

> Henry Clayton Persinger, # 20067
> Mount Olive Correctional Complex
> One Mountainside Way
> Mount Olive, West Virginia 25185

JON R. BLEVINS